UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 1:19-cr-00062-LEW |
| RANDOLPH BOURGOIN, III, ) | 1:23-cr-00003-LEW |
| ) | |
| Defendant ) | |
| ) | |

### ORDER ON DEFENDANT'S MOTIONS TO SUPPRESS

The matter before the Court is Defendant Randolph Bourgoin, III's Motions to Suppress.[1] After Maine state troopers searched Bourgoin's tractor trailer and allegedly found ammunition, the U.S. Probation Office moved to revoke Bourgoin's supervised release, and Bourgoin also was indicted for being a felon in possession of ammunition. In both matters, Bourgoin has moved to suppress the ammunition and the fruits of the search.

A hearing on these motions, with testimony from three Maine state troopers, was held on September 18, 2023. For the reasons below, Bourgoin's motions are GRANTED.

### BACKGROUND

In 2019, Defendant Bourgoin was convicted of theft from a federally licensed firearms dealer. Bourgoin was sentenced to twenty-four months of incarceration followed by three years of supervised release. Bourgoin's conditions of supervised

---

[1] Case No. 19-CR-62-LEW, ECF No. 69; Case No. 23-CR-3-LEW, ECF No 21.

release and federal law, given Bourgoin's status as a felon, both prohibit him from possessing ammunition. 18 U.S.C. §§ 922(g)(1), 924(a)(2). After Maine state troopers allegedly found ammunition in Bourgoin's tractor trailer in May 2022, U.S. Probation moved to revoke Bourgoin's supervised release in June 2022. In January 2023, Bourgoin was indicted for being a felon in possession of ammunition. Bourgoin filed a motion to suppress in both cases, and the Government filed responses in opposition.

The evening of May 19, 2022, a complainant reported that a tractor trailer hit a tree on Springy Pond Road in Otis, Maine. According to the complainant, a tractor trailer hit a tree and blew a tire. Trooper Travis Chapman began driving to Springy Pong Road, a narrow dirt road, to respond to the complaint. He found it unusual for a tractor trailer to be on a narrow dirt road, especially at nighttime.

Upon arriving at Springy Pong Road around 10:30 p.m., Trooper Chapman saw a tractor trailer along the road about fifty or sixty yards from a mobile home with its interior and exterior lights on. From inside his cruiser, Trooper Chapman looked for identifying information about the tractor trailer. He first ran the license plate, which he could only partially read, and there was no match. Next, Trooper Chapman drove around the tractor trailer and saw the blown tire. As he reached for his PA to identify himself and request the tractor's operator to speak with him, Trooper Chapman heard a gunshot from the direction of the residence. Trooper Chapman retreated from the scene and informed others about the incident.

While Trooper Chapman waited nearby for more officers to assemble, Sergeant Gavin Endre told him that one of the occupants of 760 Springy Pond Road was Randy

2

Spencer, who Trooper Chapman knew from previous encounters. The officers knew that Spencer disliked law enforcement.

After multiple officers arrived, they spoke with Ryan Perkins, who tried to drive past the officers as they gathered near Springy Pond Road. According to Trooper Chapman, Perkins claimed that he was headed to Spencer's residence to fix his car. Perkins, remarkably and apparently on his own volition, said that Spencer told him that he shot at a car and that Spencer sells methamphetamine and had some inside of his house. Sergeant Endre then instructed Trooper Chapman to prepare an affidavit and a search warrant. Following his instructions, Trooper Chapman prepared an affidavit and request for a search warrant to search (1) 760 Springy Pond Road and outbuildings on the property; (2) Randy Spencer; (3) any other person at the residence; and (4) the tractor trailer.

Trooper Chapman's search warrant affidavit explained that officers would search for firearms that could be used to shoot at a passing motorist; drugs, paraphernalia or other evidence of drug-related crime; and Randy Spencer. His affidavit stated that this property was to be seized as evidence of (1) reckless conduct with a dangerous weapon; (2) discharge of a firearm near a dwelling; and (3) driving to endanger.

Trooper Chapman also prepared a search warrant that would confer authority to search (1) 760 Springy Pond Road and outbuildings on the property; (2) Randy Spencer; and (3) any other person at the residence. Unlike the affidavit and request for a search warrant, the search warrant did not particularize the tractor trailer as a place to be searched. While Trooper Chapman intended to request authority to search the tractor

trailer, he mistakenly excluded it from the search warrant that was ultimately signed by a Maine District Court Judge. Without reviewing the warrant, Trooper Chapman then informed Sergeant Endre—who does not recall if he read the search warrant—that the search warrant was approved. Having now worked an eighteen-hour shift, Trooper Chapman went home.

Sergeant Endre and two other state troopers executed the search warrant. While on the scene, Sergeant Endre learned that the tractor trailer belonged to Aggregate Solutions and that it was assigned to Bourgoin, who was on federal probation for stealing a firearm. The officers first searched Spencer's residence, finding counterfeit money and marijuana—but no firearm. Next, the officers searched Bourgoin's tractor trailer. They found ammunition and a methamphetamine- or cocaine-base pipe. Along with the ammunition, officers allegedly discovered two receipts from Old Town Trading Post. Eventually, law enforcement went to Old Town Trading Post with these receipts, where store personnel used the timestamp to get a picture of Bourgoin purchasing the ammunition.

Three months later, the U.S. Probation Office and U.S. Attorney's Office met virtually with Bourgoin to discuss the incident. At this meeting, the Probation Office alleges, Bourgoin made incriminating statements about the ammunition.

## DISCUSSION

The Government—recognizing that the search of the tractor trailer was not permitted by the search warrant—argues that suppression is inappropriate for two

reasons.[2] First, the Government argues that the tractor trailer could be searched without a warrant under the automobile exception. Second, the Government contends that even if a warrant was required, suppression is inappropriate because the officers searched the tractor trailer with a good-faith belief that it was authorized by the search warrant. Neither argument has merit.

### A. The Automobile Exception

The Fourth Amendment prohibits "unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. Warrantless searches are "unreasonable unless one of the recognized exceptions to the warrant requirement applies." *United States v. D'Andrea*, 648 F.3d 1, 6 (1st Cir. 2011). Under the automobile exception, officers can "search an automobile prior to obtaining a warrant where they have probable cause to believe that the automobile contains contraband." *United States v. Silva*, 742 F.3d 1, 7 (1st Cir. 2007). Probable cause exists when "the facts and circumstances as to which the police have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found." *Robinson v. Cook*, 706 F.3d 25, 32 (1st Cir. 2013). The officers must have had probable cause "at the time that they searched the [automobile]." *United States v. Goldman*, 41

---

[2] The Government's brief presents the good-faith exception argument first and the automobile-exception argument second. While courts can decide whether the good-faith exception applies before addressing whether the Fourth Amendment was violated, *United States v. Leon*, 468 U.S. 897, 924 (1984), the Court addresses the automobile exception first to determine whether the vehicle search required a warrant before considering whether the Fourth Amendment was violated and if the good-faith exception applies.

F.3d 785, 787 (1st Cir. 1994).  The Government has the burden of establishing the automobile exception.  *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004).

The Government first argues that the tractor trailer could be searched without a warrant under the automobile exception because there was probable cause to believe that evidence of a crime was inside of it.  More specifically, the Government claims that the officers had probable cause to think that evidence related to the offenses of driving to endanger, reckless conduct with a dangerous weapon, and discharge of a firearm near a dwelling would be found in the vehicle.  Bourgoin argues that the automobile exception cannot apply because the officers had no probable cause to believe that evidence of any of these crimes would be found inside the tractor trailer.[3]  Having considered these three offenses, the Court agrees with Bourgoin.

First, the officers lacked probable cause to believe that evidence concerning driving to endanger would be found inside the tractor trailer.  Maine law criminalizes driving with criminal negligence[4] and "endanger[ing] the property of another or a person, including the operator or passenger in the motor vehicle being driven."  29-A M.R.S. § 2413(1).  While the officers knew that the tractor trailer had recently hit a tree, they had no reason to think that evidence concerning this offense would be found *inside* the tractor

---

[3] Bourgoin suggests that because the officers applied for a search warrant to search the tractor trailer, they must not have thought that they could search the tractor trailer under the automobile exception.  The Court will not hold the fact that the officers tried to obtain a search warrant against them.  Bourgoin's argument is flawed because both the automobile exception and a search warrant require probable cause, so, if anything, the fact that the officers believed that they had probable cause to obtain a search warrant, favors the officers believing that they had probable cause to search the tractor trailer under the automobile exception.

[4] Criminal negligence requires a "gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation."  17-A M.R.S. § 35(4)(C).

trailer. The most probative evidence of this crime was the blown tire—which was, naturally, on the outside of the vehicle.

Second, the officers did not have probable cause to believe that evidence of reckless conduct with a dangerous weapon, 17-A M.R.S. § 211, would be found in the tractor trailer. While near the tractor trailer, Trooper Chapman heard shots from the direction of the residence. Officers later identified this residence as belonging to Spencer, and, according to Trooper Chapman, Perkins said that Spencer told him that he shot at a car, corroborating Trooper Chapman's earlier observation. While Perkins stated that Spencer had methamphetamine at his house, he said nothing about the tractor trailer or Bourgoin. Thus, nothing in the record supports finding that the tractor trailer—which by the time of the search the officers knew belonged to Bourgoin—might contain evidence about the shooting.

Third, and for the same reasons, the officers did not have probable cause to conclude that evidence regarding the discharge of a firearm near a dwelling, 12 M.R.S. § 11209, would be found in the tractor trailer. The upshot of all this is that warrantless searches of automobiles do not survive constitutional rigor on the close-enough-is-good-enough model. That the suspected criminal activity occurred in the neighborhood of an automobile does not, standing alone, supply the connective tissue necessary to dispense with the warrant requirement to search all the automobiles in the neighborhood.

Given the lack of probable cause to believe that the tractor trailer contained evidence of a crime, the automobile exception does not apply.[5]

## B. The Good-faith Exception

The Government alternatively argues that suppression is inappropriate under the good-faith exception to the warrant requirement because the officers inadvertently did not include the tractor trailer in the search warrant and they reasonably believed that it was included. At first glance, this case seemingly involves "isolated negligence" by officers that justifies applying the good-faith exception. *Herring v. United States*, 555 U.S. 135, 137 (2009). But a double take of the Government's argument demonstrates that the warrant's flaw was fatal.

When a search violates the Fourth Amendment, exclusion of illegally obtained evidence is not granted as of right. Because the exclusionary rule's purpose is to deter future Fourth Amendment violations, "the benefits of deterrence must outweigh the costs" before suppression will be ordered. *Id.* at 141. Thus, police conduct "must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system" when excluding evidence. *Id.* at 144. When "an objectively reasonable law enforcement officer relie[s] in good faith on a defective warrant," suppression is inappropriate because it "would

---

[5] In his continuation report, Trooper Jacob Ferland describes what Spencer said in an interview after he was in custody around 6:12 AM on May 20. Spencer explained that Bourgoin came to his residence to obtain methamphetamine from someone named Ryan who was supposed to show up. Spencer further explained that as Bourgoin was on his way over, his tire blew out and someone undercover was following him. Trooper Ferland did not testify at the suppression hearing, and the Government has not established that law enforcement knew what Trooper Ferland learned from Spencer prior to searching the tractor trailer, so the Court will not consider this information in determining whether there was probable cause to search the tractor trailer.

serve no deterrence purpose." *United States v. Brunette*, 256 F.3d 14, 19 (1st Cir. 2001) (citing *United States v. Leon*, 468 U.S. 897, 920–21 (1984)). The Government bears the burden of establishing good faith. *United States v. Sheehan*, 70 F.4th 36, 51 (1st Cir. 2023). When a Fourth Amendment violation justifies suppression, the "indirect fruits of an illegal search . . . should be suppressed when they bear a sufficiently close relationship to the underlying illegality." *New York v. Harris*, 495 U.S. 14, 19 (1990) (citing *Wong Sun v. United States*, 371 U.S. 471 (1963)).

*Groh v. Ramirez* explains why this warrant did not authorize a search of the tractor trailer and why the good-faith exception cannot apply. 540 U.S. 551 (2004). In *Groh*, officers submitted a search warrant application to search a residence for firearms, destructive devices, and receipts pertaining to the purchase or manufacture of such weapons. *Id.* at 554. The affidavit accompanying the application explained the basis for the search, but the warrant "failed to identify any of the items" that were intended to be seized. *Id.* Instead, it mistakenly only described the residence to be searched. *Id.* The Supreme Court held the warrant invalid.[6] *Id.* at 557. The Court reasoned that the "fact that the *application* adequately described the 'things to be seized' does not save the *warrant* from its facial invalidity" because the "Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." *Id.* Like the warrant in *Groh*, this warrant, by making no reference whatsoever to the tractor trailer, did not satisfy the Warrant Clause's particularity requirement, so the resulting search of

---

[6] *Groh v. Ramirez* involved civil claims under 42 U.S.C. § 1983 and *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). *See Groh*, 540 U.S. at 555–56. Even though *Groh* was a civil lawsuit, the Supreme Court's holdings about the Fourth Amendment in deciding whether qualified immunity existed are binding in determining whether the good-faith exception applies. *See Malley v. Briggs*, 475 U.S. 335, 344 (1986).

9

Bourgoin's tractor trailer was warrantless and unconstitutional.[7] *See id.* at 558 (reasoning that because "the warrant did not describe the items to be seized *at all*" the "warrant was so obviously deficient that we must regard the search as 'warrantless' within the meaning of our case law"); *see also D'Andrea*, 648 F.3d at 6 ("A warrantless search is unreasonable unless one of the recognized exceptions to the warrant requirement applies.").

*Groh* squarely rejects the Government's argument concerning the good-faith exception. The Government appears to argue that close only counts in horseshoes, hand grenades and warrantless searches so long as the police work was not hallmarked by nefarious intent. I do not believe the state troopers' conduct was based on anything other than a mistaken belief, albeit unjustified, that the particulars of the warrant included the tractor trailer, just as the application materials had. However, that reflection of reality fails to get at the heart of the *Leon* rule and it does nothing to ameliorate the search of property that was not included at all, much less with particularity, in the warrant. The *Groh* Court reasoned that the warrant was so facially deficient by failing to particularize the place to be searched that the executing officers could not have "reasonably presume[d] it to be valid." *Groh*, 540 U.S. at 565 (quoting *Leon*, 468 U.S. at 923). Like *Groh*, even "a cursory reading of the warrant in this case—perhaps just a simple glance—

---

[7] The Government argues in favor of applying the good-faith exception by noting that the search warrant said that it was based on Trooper Chapman's affidavit, which was attached to the search warrant. This argument fails because there is no language of express incorporation in the search warrant. *See United States v. Burgos-Montes*, 786 F.3d 92, 108 (1st Cir. 2015) ("Affidavit language expressly incorporated by the warrant can satisfy the particularity requirement."); *see also Groh*, 540 U.S. at 557–58 (observing that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant").

would have revealed a glaring deficiency [concerning the tractor trailer] that any reasonable police officer would have known was constitutionally fatal." *Id.* As Attorney Nixon pointed out at the hearing, somewhat more pithily than the *Groh* Court, "the warrant [rather than the application] is the thing."

Trying to distinguish *Groh*, the Government contends that this Court should follow the Sixth Circuit's decision applying the good-faith exception in *United States v. Watson*, 498 F.3d 429 (2007). In *Watson*, a warrant omitted a residence from the grant-of-authority section. *Id.* at 432. There, the Sixth Circuit noted the similarity of the mistake to the one made in *Groh*, but the court distinguished *Groh*. *Id.* at 432–33. Because the "warrant's introductory paragraph put a reasonable officer on notice that the warrant was issued for the purpose of searching a premises," the warrant described "the residence in painstaking detail," and the grant-of-authority section referred to the residence, the Sixth Circuit reasoned that the omission was "virtually unnoticeable." *Id.* at 432. Thus, the case differed from the "glaring deficiency" present in *Groh*, justifying the application of the good-faith exception. *Groh*, 540 U.S. at 564.

This case involves a "glaring deficiency," *id.*, rather than a "virtually unnoticeable" omission. *Watson*, 498 F.3d at 432; *see also Leon*, 468 U.S. at 923 ("[A] warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."). Because any reasonable officer that read the warrant would have known that a search of the tractor trailer was not authorized, the good-faith exception cannot apply.

11

## CONCLUSION

For these reasons, Bourgoin's Motions to Suppress[8] (Case No. 19-CR-62-LEW, ECF No. 69; Case No. 23-CR-3-LEW, ECF No 21) are **GRANTED**.

**SO ORDERED.**

Dated this 26th day of September, 2023.

                                            /s/ Lance E. Walker
                                            UNITED STATES DISTRICT JUDGE

---

[8] Regarding Case No. 19-CR-62-LEW, the Government has made no argument concerning whether the exclusionary rule applies to proceedings to revoke supervised release. In *Pennsylvania Board of Probation & Parole v. Scott*, 524 U.S. 357, 369 (1998), the Supreme Court held that state-run "parole boards are not required by federal law to exclude evidence obtained in violation of the Fourth Amendment." All of the Courts of Appeals—except for the First Circuit—have held that the exclusionary rule does not apply to federal supervised-release revocation proceedings. *United States v. Hightower*, 950 F.3d 33, 38 (2d Cir. 2020) (per curiam); *United States v. Bazzano*, 712 F.2d 826, 829 (3d Cir. 1983) (en banc) (per curiam); *United States v. Armstrong*, 187 F.3d 392, 394 (4th Cir. 1999); *United States v. Montez*, 952 F.2d 854, 857 (5th Cir. 1992) (holding that the "exclusionary rule, absent a showing of harassment, does not apply to revocation of supervised release hearings"); *United States v. Robinson*, 63 F.4th 530, 536 (6th Cir. 2023); *United States v. Phillips*, 914 F.3d 557, 560 (7th Cir. 2019); *United States v. Charles*, 531 F.3d 637, 640 (8th Cir. 2008) (holding that the exclusionary rule does not apply to supervised-release revocation proceedings absent harassment); *United States v. Hebert*, 201 F.3d 1103, 1104 (9th Cir. 2000) (per curiam); *United States v. Finney*, 897 F.2d 1047, 1048 (10th Cir. 1990); *United States v. Hill*, 946 F.3d 1239, 1242 (11th Cir. 2020) (per curiam). Since there is no binding precedent holding that the exclusionary rule does not apply to supervised-release revocation proceedings and because the Government has not argued that the exclusionary rule does not apply to such proceedings, the Court does not address this issue.